oh yeah oh yeah oh yeah all persons having any manner or form of form of business before the Honorable the United States Court of Appeals for the Fourth Circuit are admonished to give their attention for the court is now sitting God save the United States and this Honorable Court. All right, Mr. Isley, you may proceed. Thank you, Your Honor. Good morning, Your Honors. May it please the court. My name is Justin Isley and I represent the appellant Stephen McGrath. Mr. McGrath is not here to appeal his conviction. He is merely asking this court review two sentencing arguments that have substantial constitutional and fairness implications. Considering Mr. McGrath's arguments on their merits is not only legally correct but doing so lends greater certainty and clarity to the criminal justice process. Our criminal justice system has been and is still sending people to prisons at rates that were not foreseen by the founders of this country. Jury trials are been consolidated to the Department of Justice. The threats of mandatory minimums and sentencing enhancements that are outside the federal bench's control have led to very little exercise of a defendant's constitutional rights over the past 30 years. Review of these claims will cause no meaningful harm to the government considering their limit and scope. My client raises two points in appealing the sentence of 22 years. First, Mr. McGrath argues that his due process rights were violated when there was an impermissible consideration of religious principles in his sentence by the sentencing court. During the sentencing, the judge made references to the soul dying in equating it to murder at the sentencing proceeding. In addition, mentioned a religious phrase, but for the all of us. Question is to your your appeal waiver in the plea? Your honor, that's that's a good question. The government, this case is a little bit unique procedurally and normally in my practice as we do quite a few of these appeals were on the panel, the government will file a motion to dismiss based on the the plea waiver. I don't know that they're procedurally barred at this point because they do raise it in their brief. I do believe that the question comes down to whether there's a colorable claim of due process. If there's not a colorable claim on the merits, then we're back to square one. I don't have a argument on this point, but if there is a colorable claim, I do not believe that the this court and other courts have enforced appellate waivers when there's a genuine issue of due process violations such of the nature that we have raised. Again, if the court disagrees on that point. Excuse me, why your position is that you can simply slap on a boilerplate allegation of due process to any sentencing error that you perceive? These questions are evidentiary questions and all the rest and I just don't, if you can make a constitutional error out of this sentencing proceeding and I would think you could make a constitutional claim of constitutional error as to any sentencing proceeding and the whole value of plea waivers, appeal waivers, which often work to the defendant's benefit, likely to be lost. Well, your respectfully, this argument is based on the words of the trial court and the argument that this is boilerplate is not boilerplate language that I use in any of our briefs and I don't see it too frequently. It's a serious argument to make alleging an infringement of a due process right and it's not made lightly, but it was something that was perceived by counsel and my client and to the extent that this has implications about the appearance of the trial court imposing sentence based on the guidelines and the factors, well more specifically the factors, is important to address on the merits because we do not argue this in a boilerplate manner. It's strictly based on the principles set forth in the precedent of this court and the Supreme Court. The decision of the trial court should not be made based in any way on religious principles and the court said that the reviewing standard is whether or not this religious principle or any other ones unduly influenced the sentence imposed. Counsel, this is Judge Keenan, but you're not challenging your appeal waiver, are you? I don't see anything in your submission that suggests that you're saying that the plea waiver is invalid. Is that correct? Thank you for the question, Your Honor. I am not, we are not arguing that there is not an appeal waiver that is part of the plea agreements. The argument is, well and I can address these, we have two arguments on appeal. The first argument is that a due process violation of this nature does not fall within the scope of that waiver. Okay, could you point us to the, could you point us to the language then in the appeal waiver that suggests that your current argument is outside the scope? Well, I would go back to the cases and these things are reviewed for essentially on a contractual basis about consideration and the only really the difference between the contractual type review here is that defendants are given some deference because they are not quite in the same position as those in formal contracts and because of the type of seriousness here. I do not see, I would argue, Your Honor, respectfully in the opposite. There's no provision here that says that he waives his right to be sentenced by a court that doesn't consider religious principles. Again, I understand the court has to make a decision whether or not the comments in the court proceeding rise to that level, but just as a matter of public policy and the literal language of the waiver, if it's not explicitly included, then it should not fall within the waiver that my client signed at the sentencing. Okay, well my concern was with the language in the waiver that says waiving any constitutional challenge to the calculation and imposition of any term of imprisonment and so if you could tell me how you get beyond that language, that would be helpful. Right, in the language of that is the constitutional challenge of the calculation of the sentence. I don't read that language to be one that. Excuse me, counsel, I didn't mean to interrupt, but it's calculation and imposition of any term of imprisonment and I didn't know if you had that language in front of you. It's both calculation and imposition. Yes, I do have that language in front of me, Your Honor, and I would point to, I do see that language in the argument. I would point to the fact that this court has addressed substantively constitutional challenges where the sentencing court has made religious arguments in sentencing and the policy implications for a client to waive a challenge to the, a scenario where a sentencing perhaps was completely and wholly based on a judge's religious principles, whatever they may be, is not foreseeable to a defendant when he enters a plea waiver at his plea hearing. So if that would be to the rule, a sentencing court could explicitly and only mention Bible verses in the sentencing and that would not be permissibly reviewed because of the pelt waiver and the consequences of that would be devastating to the credibility of our judiciary and respectfully the type of fundamental protections from intrusion of religion into all facets of our government are important and to that extent that type of application to an appeal waiver is problematic because that would allow for any religious statements would be above review when a client signs a plea waiver at his plea hearing knowing what will happen at the sentencing stage. So counsel, this is Chief Judge Gregory, you're framing this as, this is a question, I'm not commenting, but it's a question. Are you framing this as if this is similar to, I know you don't want to use this word, but similar to sentencing you for improper, for improper reasons? Like, for example, would you say that the court is not allowed to sentence you for an improper reason, mainly for religious-based, is that what you're saying, why are you outside of it? That is correct, either race or religion, any of those fundamental purposes. I think if the court were to enforce this to pelt waiver on this issue and not reach the merits, a trial court could also base a sentence on race and it would not be reviewable by this court. And so I think there's a lot of just very practical problems with not addressing it on the merits. And again, these types of, I'm sorry, Your Honor. Yeah, I follow that, that's why I thought that Judge Wilkinson asked you a very good question because he's actually right. Because this is just a God variety of procedural problems and everyone would be getting around, like he said, and Judge Keenan, likewise, and saying what is left that will be outside. But yeah, that's what I thought you were saying, that it's an improper reason, just like it would be race or sex or anything else. But here's the other question that makes it difficult. Because it's not God variety, it is specific. What do you point to in this record will show that the court demonstrated any animus as to religious practice of the judge or your client that impacted that level of improper sentence basis? Can you point to that? I mean, so far you have the reference to things like but for the grace of God and some references to soul and those things. But what level do you have in the record that would be evidence improper basis or animus or that we could say that that would be, as you write, would be detrimental to our system of justice or anything like that? What do you have for that? Yes, Your Honor. I appreciate the question. I do credit the government for bringing out these other cases. And essentially the argument is in other instances, this court and other courts around the country have seen arguably stronger language, more mention of religious principles in the tenancy and still upheld it. As I mentioned in my brief, the standard is did any of these religious principles or race, were these influencing factors in the tenancy? This is the thing to the degree that they worked in any direction. I don't think that they did. But it didn't seem to me that this was a religious kind of sentence. But to the degree that they worked in any direction, they worked probably in your favor, in the direction of mercy. And the guidelines recommended life imprisonment. And your client received from Judge Grimm 22 years. And to the degree that there was any reference to the spirit or the soul, that worked in your favor. And I wouldn't think that we would want to eliminate mercy from sentencing proceedings. A lot of defendants deserve mercy, pure and simple. And that's why the guidelines are advisory. They're no longer rigid. But the constitutional claim seemed to me to be such a stretch, frankly, that when we get a so-called constitutional claim that is such an incredible stretch, I wanted to come back to Judge Keenan's point. That would seem to me to bring it within the scope of the plea waiver. And once again, the plea waivers are an important part of plea bargaining. You may not like them, but many times they work. The plea waiver can be a significant factor in reducing a defendant's exposure and sentence. And so it seems to me you're working against the interests of defendants in both of these ways. One, by vitiating the plea waiver. And the other, by taking references to grace and mercy that work in a defendant's favor. And you're saying that that's impermissible. And what you're doing is you're taking the element of compassion out of sentencing hearings. And that can't be right. Your Honor, I do definitely appreciate the court's concern about preserving the issue of mercy and leniency. However, the religious phrase that was mentioned is specifically Christian and more so Protestant, but it is a Christian verse. And mercy does exist within the factors of 3553A through the characteristics of the defendant and all of the factors. More than offhand remarks. I certainly appreciate the point of view of the court. It was something that was noted by this trial counsel and my client. And to the extent this court reviews these things, I guess the question becomes, the language of this court is whether or not this point of view influenced the trial court and did it influence the punishment. And I heard, Your Honor, mention that you believe it actually inured to my client's benefit. However, on the other side, the mentioning of the killing of the soul is essentially the same as murder actually cuts against my client because it was equated essentially that these types of crimes are – because of the nature of them are essentially can be like a homicide. And so when you have religious principles that talk about soul or biblical verses or any kind of religious text, it does call into question and some doubt into the person who's standing there being sentenced. Again, someone being sentenced definitely wants to have mercy considered, rehabilitation considered. But these should be not religious principles. They are human principles. They are principles that are available to the sentencing court under the statute. And it's important for our justice system, especially as we become more diverse, that people that are in front of the court can feel that it's based strictly on the law and not any – even if sometimes or mostly well-meaning religious principles that kind of invade that decision-making. But I do, again, appreciate, Your Honor, being concerned about mercy being swept out of our system because it is an important principle under the law. And I would like to – forgive me. This is the first time I'm doing this type of remote argument.  But I did want to address the procedural issue with the second argument since it was such a contested issue on this constitutional claim. I know it's a concern of the court on this procedural reasonableness claim. And as I mentioned in the reply brief, I normally get a motion to dismiss after the opening brief, but it was actually in the responsive brief. So in my reply brief, I bring up the issue of whether or not this court should address the procedural reasonableness of the sentence. Mr. McGrath was already at the high end of the guidelines. Therefore, the court actually – normally, I know the court has reviewed these plea agreements and the waivers, is that if it's above a certain guideline level, well, then the defendant can appeal. If it's below, then the government can appeal. But on the nature of this plea, there was nowhere to go above. So essentially, there would be no guideline calculation that could have allowed for any kind of appeal. And as mentioned in the paper that I listed in my reply brief, this court should consider the consideration that's given – asking this court to consider the consideration given at each portion that it relates to something. Did the defendant give up something? Did the government give up something? And respectfully, there was never going to be a situation where Mr. McGrath could have appealed his sentence because he was already at the astronomical lifetime sentencing. And so because there's a lack of specific consideration, we would respectfully ask the court to consider the merits of the procedural reasonableness argument, specifically because it is so important as we move to a more science-based or data-based sentencing. At sentencing, we raise several statistical arguments that come not from way out there sources. They come from the federal government's own statistics. And as this court is aware, sentencing for sexual offenses has been astronomically rising year after year. And that's not under the control of the judiciary, but this is a very serious issue. So we would ask that if we are going to move to a more science-based decision-making process, that statistics be considered because that was one of the founding principles of the guidelines themselves is that they took this data to try to make sure that sentences were not disparate and they were fair for like persons. And if well-founded statistics are dismissed so quickly, it's going to affect the integrity of the sentences and the appearance to people that are being sentenced. You've covered all that in your brief. Yes, and I would just reserve whatever time I have left for rebuttal, please. Thank you. Thank you, counsel. Mr. Baldwin. Thank you, Your Honor. May it please the court. And just for the record, I heard Mr. Isaac's argument to completion before the phone cut off. Thank you, Your Honor.  I'm a United States attorney in Greenbelt, Maryland. I want to address first right off, Your Honor, the notion of I think a key notion here, which has to do with the waiver. At JA 180, Mr. Isley writes in the sentencing memorandum that the prominent benefit of the bargain in this case was that in exchange for a plea, a count of reduction of child pornography would be dropped in exchange for a plea to solicitation of a minor along with a simple child pornography possession. And he notes that the original mandatory minimum was 15 years, whereas the minimum with the new count, which was the one that he felt guilty, was 10 years. And that is the benefit of the bargain that Mr. Isley was just mentioning. There was, in fact, a consideration given for the waiver plea. And, in fact, what the defense did was trade a mandatory minimum of 15 years for the maximum of 30 years for a mandatory minimum of 10 years with a maximum of life in prison. And I presume that the calculus for that was that it was he was more likely to be able to pull a sentence down and wasn't as concerned about the top end. And that's, in fact, how it played out in the court. And so there was a serious benefit to the defendant here. He was well aware of the plea waiver and the resulting potential for a offense level 43. There's a specific discussion of it at JA 49 in the transcript. The judge touched upon the fact of an offense level 43 claim. Basically, the defendant was giving up a right to appeal because any sentence up to life would be within that offense level, although the government did retain the right to appeal. And so there was a benefit of the bargain here. And the lay argument in respect to the refinery with respect to procedural readableness is just not based in fact. With respect to the notion of how this fits into the plea waiver construct and the case law that's been set forth there, as Judge Keenan noted, there's any assertion here that the waiver is invalid. It is valid based on the plea agreement itself and also based on the colloquy that was in court that really hasn't been challenged. I think that the place where this case is goes to the scope question. And really for the government here, it seems very clear that this type of challenge is outside the scope of – excuse me, is within the scope of the plea waiver. It's not in one of those narrow exceptions that would be outside the scope of the plea waiver. And the court has dealt with this in a long series of case law, including the Thornsberry case that was cited in our papers. And it addresses this. And in fact, it addresses what the chief judge noted was that if you create a constitutional claim, so to speak, it can be done in almost every case. And if you view that as being illegal, for instance, as I would look at in the Thornsberry case, and Judge Duncan there reviewed that the term illegal has been used in the specific context of plea waivers where the sentence is alleged to have been beyond the authority of the district court to impose. So there have been instances where a judge has been found to be acting outside the boundaries of authority. For instance, orders sex offender registration where there was no authority to do so or orders restitution where there was no authority to do so in similar cases. There's also another bucket, if you will, of things that could be illegal claims. For instance, the one that's mentioned most in the case law is claiming that a sentence was based on a constitutionally impermissible factor such as race. I'll return to that in a moment. And finally, claiming that a post-plea violation of the right to counsel was an issue. So the question becomes is just any claim that has a constitutional or alleged constitutional aspect to it therefore sufficient to get past a plea waiver? Well, this court has found that that's not the case. For example, in the Dalzell case and the Ballard case that were cited in our papers. And what appears to be happening here is something that the court has noted before in other cases. For instance, I believe in Blick there was a footnote that talked about there's a validity step and a scope step. And in the scope step, it looked like the possibility or a miscarriage of justice seemed to be subsumed within the scope portion of the consideration. So the Fourth Circuit has built this miscarriage of justice aspect into the scope aspect. And miscarriage of justice is a very high standard for getting to the realm of getting past a plea waiver. And I think that a miscarriage of justice analysis, which is phrased in our brief as a colorable claim. And one of the problems with the notion of colorable is that it's a metaphor. And so the question is, well, what is colorable? Is it a pastel or is it a jewel tone? And the government submits, Your Honors, that in fact in practice in the cases that it has – the court essentially looked at what the appellant has put forward and has looked at those things and said, well, this doesn't get there in this instance. And so we're not going to waive the plea waiver. It's totally within the plea waiver even though the appellant has argued that there's some sort of constitutional aspect to the claim. And there have been instances where a plea waiver was set aside in order to get at something more specific. For instance, in the Attar case, the court said, well, we're not going to hold the plea waiver. We're going to consider this outside the scope because the defendant has alleged that he was deprived the right of counsel at sentencing. That was looked at and considered. And ultimately the court found that the defendant essentially constructively dismissed his attorneys at sentencing in such a way that it would have whipsawed the judge. And the underlying constitutional argument he made there was considered under the validity prong. But essentially that's where the notion of this colorable analysis came from. And in that footnote, footnote two of the Attar decision, it talks about sufficiently colorable. And that's where I'm talking about. It's not just merely any argument that there's a constitutional connection would apply. So that's where I believe we are in the framework of the court, Your Honors. And let me explain why the government doesn't believe that the facts that are presented here, that the defendant or the appellant has met the obligation of putting forth enough information that would result in finding these facts are outside the scope of the plea waiver. And it's very straightforward. The first claim in this appeal has to do with the statistics aspect of this, which goes to essentially whether it was procedurally, whether the judge considered arguments that were made in mitigation and sentencing, arguments that were made that should be considered with respect to the defendant's culpability and the factors under 3553A. And in ordinary course, this is the type of guideline consideration and proceeding within sentencing that would be within the scope of the waiver. There's many cases. For instance, the general case in which some items were set, the government did not even entertain the notion that it would challenge it in terms of scope. In that case, for instance, there were a couple of claims, one that had to do with apprendi, and another one had to do with competency. And the government didn't argue that those were things that would be subject to the waiver. But there were three issues that would be subject to the waiver, and they had to do with how things were considered at the hearing itself, guidelines, calculations, and things of that sort. This claim with respect to statistics is in the first sort of those categories. And as a factual matter in this instance, Judge Graham did consider the statistics. He noted that the statistical studies that had been asserted were all over the place, and he also even calculated in terms of I don't know whether you're the 95% of people in your situation that don't recidivate or the 5% of people do. I can't really know in an individual instance based on statistics, which is a truism. But the judge also acknowledged that he had looked at Dr. Berlin's report, considered it very heavily. And Dr. Berlin issued a report that said if the defendant is properly treated, then the chance of recidivation is very low. So it's obvious that the judge considered those things. In fact, he said he considered those things. But also – We don't need to get into this. That's correct, Your Honor. And that is sort of the – That's a merits claim. Yes, Your Honor. Secondly, and I'll move on to the second merits claim, Your Honor, which is the one that has been asserted to have this constitutional aspect. And, Your Honor, I think the appropriate analysis in this case is similar to another case. I believe it was the Dalziel case. In that case, the assertion was there was an argument that a defendant's prior confession to a murder that had been rejected by a state court was accepted by the federal district court in the sentencing. And the defendant asserted that that confession was impeccably compelled. It wasn't actually a confession at all. It was against the Fifth Amendment rights of the defendant. But in that case, the court found that there may be a case in which an unreliable statement was beyond the scope of the appellate waiver. But essentially that case, the Dalziel case, wasn't one of them in the circumstances that have been shown. And I think that's exactly where the court is in this case and should be in this case, Your Honor. Here the defendant put his best foot forward, sided the Baker case. But in Baker, as a legal matter, there were two things. One was it was a judge that expressly identified with a religious group, expressed a religious orientation with respect to the facts of the case. A, and B, then punished the defendant with respect to that, or there was appearance of a punishment of the defendant in reaction or with that identification in mind. This case is nowhere near that. In the context of the colorable metaphor, there's not even a pastel here. We don't get to the first step. There's not the identification with a religious sentiment such that the judge – and furthermore, there is no action based on religious sentiment. And therefore, Your Honor, it's based on the fact that this doesn't even get to – certainly doesn't get to a miscarriage of justice. There's been no showing of a miscarriage of justice, and there was the potential perhaps that this would be a case in which there was an impermissible factor like race that was considered. But once the facts are put forward by the appellant, as it would have been in a response to motion to submit, so I don't think that's really an issue here. Once those facts are put forward, the court can see that this is not the type of case in which the facts have been found to be outside the scope of an appellant waiver. And therefore, the claim – the appeal should be dismissed because the waiver still operates against both the arguments that are made by the defendant and the appellant. So that pretty much covers it. Thank you, Your Honor. I listened closely to and I was able to hear government's argument, and I come back to the point that if there are – the decision of this court in reviewing a claim for impermissible reasons such as religion or race, I don't know how we parse – this court can parse that out. And if the conclusion is that it is contained within the appeal waiver, then the consequence of that decision is that these claims are not reviewable. If the court does consider the merits and says that this review of the record shows that it's not a culpable claim, then that seems to be the more prudent route that will not forego someone the ability to review a case if they make a claim based on religion or race. Just as a practical matter, this is not an issue that – where a government a lot of times will say they will be inundated with numerous appeals if something like this is allowed. I myself and my partner filed many cases with this court, and we reviewed most of the cases that come out, and these are not very common claims at all. And so to the extent that there is a concern that this will lead to an avalanche of litigation, I just don't think it would be borne out by the types of cases that this court receives. So we are asking the court, because of the serious nature of ensuring the credibility not only to those observing the proceeding or participating in it, those who are subject to it, that the court render a decision based on the merits of the claim. With respect to – yes, Sean. Counsel, for example, I see what you're saying, but in this case, in the facts, didn't you open the door about homicide? About comparing the sentencing of homicides to sentencing in child pornography cases, and you could say that the court was juxtapositioning your point to, well, in fact, these victims suffer a type of death. Did you open that door? I do – I don't have that section of the record in front of me, but I do definitely remember making that argument. You should know the record better than I do. I do. I do. I remember my own – yes. And you did it in a sense of irony. And that's – you did. And so you opened the door, didn't you? And the judge was trying to address, as he's supposed to, your arguments, and you made that as a non-frivolous argument, didn't you? I did. Yes, I did. Well, you made it as a non-frivolous argument, then the court is obligated to address it. And he addressed it by saying, well, I'm not sure, counsel, when you have victims like this, they die sort of a slow death as an internal one. You might say sold or internal. I think in this case here, you're talking about things that we're not referencing preference or animals in terms of race or religion. Instead, it's dealing with the philosophical sense of the nuances of human experience that you raised that are important in sentencing. So I'll get to the point that if someone says something over the top like it was adjudicated in the case of Baker, but this is not that case. And as Judge Wilkinson said, the point about bear glad by the grace of God, it was to your favor. He was saying that all of us do things that are difficult in which we had, and it may be life-changing situations. And so to say that this type of record would suggest that animals and the constitutional problem that you talk about and that you want us to broadly address in this case, I see where you're going to. This is not the case, counsel. Is it? Your Honor, you've made very good arguments, and I certainly have made that argument. These are not arguments. I don't have my days of argument over when I'm fighting law. I'm sorry. I'm sorry. The point that you bring up, Your Honor, is – I apologize. It's been too long in arguing around. But I hear your point based on what I said at the sentencing, and I would just go back to similar what I previously said in my opening, is that it was certainly fair to come back at my point about the way we treat these sex offenses in the federal system and to make points from the bench that show these are the types of things that make this serious. For example, the trial court was at length mentioned psychological harm, the court's experience in reviewing kind of what happens to the victims. There were victim letters that were substantially – they themselves shared these harms that happened that are not short term. They can definitely be in our long term. But the mention of the soul is not required, and I get the kind of mentioning of that to make a point. But these points that are made in this way point to the idea that there is a manner in which the court is viewing the events that are happening before it in a non-secular way. And is it nearly as overt as the Baker case? Of course not. And I've not tried to compare this factually directly to the Baker case that was over the top, but there are clues that are given by people that make decisions as to what guides them. And certainly people have a right to be guided by certain principles, but if they fall outside what is mandated by Congress through 3553A, I think the court should strictly review these types of situations to ensure credibility to those that are being punished so that they know that what they are being sentenced for are permissible factors and not based on the sentencing court's view of the world through a religious scope. And it's important for the credibility of the judiciary as we become more diverse, and that's where the argument lies with respect to that. And I think that the argument on the procedural and procedural justice specifics has been made fully, and I appreciate the court for their time. Thank you so much, counsel, for your argument. I note, Mr. Eisner, you were court appointed, and I just want to say, give a special thanks to you because our court depends upon lawyers like you who take these cases and argue the cases that you've done very well on behalf of the client. They're very important to the court, and we thank you. And obviously, Mr. Ball, we also thank you for your able representation in the United States. We can't come down and shake your hand, but know that the sentiment and expression is just as intense of our gratitude for your being here. We ask you and hope that you will stay safe and be well. Thank you, counsel. Thank you, Your Honor. The court will take a brief recess before hearing the next case.
judges: Roger L. Gregory, J. Harvie Wilkinson III, Barbara Milano Keenan